Ervin **MILLER** and Joseph McLaughlin, Plaintiffs,

v.

**IOWA STATE ASCS COMMITTEE** et al., Defendants.

Civ. No. 74–21–1.

United States District Court, S. D. Iowa, Central Division.

Feb. 14, 1974.

---

Richard G. Santi, Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for Miller.

D. M. Statton, Mahoney, Jordan & Statton, Boone, Iowa, for McLaughlin.

Allen L. Donielson, U. S. Dist. Atty., S. Dist. of Iowa, Keith E. Uhl, Asst. U. S. Dist. Atty., Des Moines, Iowa and Ar-

nold J. Grundeman, Shawnee Mission, Kan., for Dept. of Agriculture, Kansas.

## MEMORANDUM AND ORDER

STUART, District Judge.

Plaintiffs' motion for preliminary injunction came on for hearing February 6, 1974 pursuant to Order of Court. Mr. Miller was represented by his counsel Richard G. Santi, and Joseph McLaughlin was represented by his counsel D. M. Statton. Defendants appeared by Allen L. Donielson, Keith E. Uhl and Arnold J. Grundeman. It was agreed by the parties that this hearing should constitute the hearing both for the preliminary injunction and the permanent injunction inasmuch as the sole question presented was one of procedural due process under the 5th Amendment to the United States Constitution. After hearing the evidence, listening to statements of counsel and receiving written briefs the Court extended the restraining order pending final ruling, took the case under advisement and is now prepared to render a decision.

Plaintiff Miller is presently the chairman of the Boone County ASCS Committee, an elected position. McLaughlin on the other hand is the executive director for the ASCS in Boone County, a position which he holds at the pleasure of the county committee.

Both plaintiffs were notified by certified mail on January 24, 1974, that they were being suspended from their respective positions effective the close of business on January 25, 1974. On January 28, 1974, both plaintiffs applied to the Court for a temporary restraining order, which was granted.

Plaintiff Miller was suspended from his position pursuant to 7 CFR 7.28, and charged with political activities in the County Office by using county office personnel, equipment and supplies during working hours, consuming alcohol on government leased property while in duty status and charging personal telephone toll calls to the government.

The charges made against plaintiff McLaughlin pursuant to 7 CFR 7.29, include forging the signature of another employee on CCC drafts, illegal use of county office collections, and granting unauthorized activities of counter personnel under his jurisdiction during duty hours.

In both instances the plaintiffs were given 15 days from the date of mailing of the letter to them to request a hearing before the State ASCS Committee to show why the action should not be taken as provided by the Code of Federal Regulations.

Plaintiffs' complaint seeks an injunction restraining and preventing the defendants from suspending the plaintiffs without the benefit of a hearing. Plaintiffs also sought a preliminary injunction against defendants during the course of this lawsuit. The Court has had ample opportunity to read the briefs and cases cited by the parties in this suit. After a review of those authorities the Court is of the opinion that plaintiffs' request for injunctive relief must be denied. The Court is of the further opinion, however, that those portions of 7 CFR 7.28, and 7 CFR 7.29, which relate to a pre-termination "hearing" are unconstitutional, and as such must give way to a hearing procedure to be outlined below.

### Pre-Suspension Hearing

For the purpose of this ruling, it is assumed without deciding that the liberty and property rights claimed by both plaintiffs are encompassed within the protection of the 5th Amendment and they are entitled to procedural due process. The question is whether such due process requires a hearing prior to suspension.

The procedural safeguards called for depend upon a balancing of the governmental and private interests involved. The government's interest is in maintaining efficiency through the prompt removal or suspension of employees who

presently contribute to inefficiency because of their past conduct. The employee's interest is in avoiding unwarranted dismissal or suspension "for cause" when it is not warranted by the facts. Kennedy v. Sanchez (D.C.Ill., 1972), 349 F.Supp. 863, 865. The theory "for cause" presupposes a right to hearing, notice and appeal. Freeman v. Gould Special School District (CA 8, 1969), 405 F.2d 1153. There is no question that plaintiffs' suspension here has been predicated on "cause" and that as such they are entitled to a hearing that fully conforms with procedural due process.

The Court has found no authority to indicate that a presuspension hearing is guaranteed plaintiffs as a matter of due process. The Court has been cited to a plethora of recent cases that deal with the developing area of procedural due process, however, only two deal with the issue of suspension as it is now before the Court. The remainder of the cases involve procedural due process but they are not determinative of plaintiffs' rights as they pertain to a presuspension hearing.

The issue of suspension of a public official received high court scrutiny very early in the case of Wilson v. North Carolina (1898), 169 U.S. 586, 18 S.Ct. 435, 42 L.Ed. 865. In that case, at page 591, 18 S.Ct. 435, the Court held that the act of a governor in suspending a public official is not a finality. And under the *Wilson* rationale, there is no inherent right [to a presuspension hearing]. Fair v. Kirk (D.C.Fla., 1970), 317 F.Supp. 12, 16. Absent special circumstances there has been no definitive determination that anyone deserves a presuspension hearing. Ibid, p. 16.

█ (1) Cognizant of the definitional differences between "suspension" and "removal", this Court is of the opinion that eradication of corrupt practices in government is such an important responsibility that suspension of a public official prior to a hearing may be consonant with due process. Ibid, p. 17.

█ (2) In this case the Court has weighed and balanced the nature of plaintiffs' interests and determined that they are such that a presuspension hearing is not necessary because of the fact that they are afforded a pre-termination hearing, and because of the conflicting governmental and private rights. The Court has not found present here an overriding property interest on the part of the plaintiffs, such as was present in Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (welfare recipients); Fuentes v. Shevin (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (replevined personal property); Bell v. Burson (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (suspension of drivers license); or Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (rights of unwed father as to his children). Plaintiff Miller does not rely on the salary paid him as chairman of the county committee for his livelihood; and while plaintiff McLaughlin does rely on his salary for his support he is not in the dire need contemplated by *Goldberg*. Neither plaintiff relies primarily on the issue of deprivation of property.

Instead, the plaintiffs alleged, and the Court agrees, that the due process question posed here is one concerning loss of liberty. That issue is crystalized by the fact that injury to reputation is claimed and termination and disqualification from government service would effectively preclude them from ever holding another position with the ASCS. The practical effect, as noted more fully later, would be to seriously affect their future employment or office holding opportunities. The injury to reputation occurred when the charge was made public. A presuspension hearing would not undo that. The important thing is that plaintiffs be afforded an opportunity to clear their names. The disqualification does not become effective until termination.

This Court is not advocating a standard for government employees reminiscent of Cafeteria & Restaurant Workers

Union v. McElroy (1961), 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, nevertheless, in cases involving federal officials in decision-making capacities, suspension prior to a full hearing to determine disqualification or termination when adequate notice of the charges involved is made, comports with the standards as set down in the line of cases involving termination of government employees. See Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; McNeill v. Butz (CA 4, 1973), 480 F.2d 314; Slochower v. Board of Higher Education (1961), 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; Cafeteria & Restaurant Workers Union v. McElroy, supra; Fair v. Kirk, supra, and Kennedy v. Sanchez, supra. A full pretermination hearing complying with procedural due process, as it will be set down below, will in the opinion of the Court fully and adequately protect plaintiffs' constitutional rights.

This Court has found no special circumstances present requiring defendants to give plaintiffs a presuspension hearing to conform to procedural due process.

Unconstitutionality of Code of Federal Regulations

This brings the Court to a discussion of just what procedural due process plaintiffs are entitled to prior to any disqualification or removal under Sections 7.28 and 7.29. As noted at the outset of this memorandum, the Court is of the opinion that the hearing process contained in these two sections is unconstitutional on its face.

The Code of Federal Regulations sections under which plaintiffs Miller and McLaughlin were suspended are nearly identical in text. The major difference is that section 7.28 deals with county committeemen, community committeemen; delegates to the county conventions or alternates to those offices. Section 7.29 concerns the removal from office of county executive directors and other employees of the County ASCS Committees. Suspension and eventual termination under these procedures would render an individual incapable of ever serving in an ASCS capacity of any type in the future.

The pertinent language in these code sections provides, in part:

* * * Before any such disqualification determination is made, the State committee shall undertake such investigation as it deems necessary after which the State Committee shall give the affected person a written statement of reasons for the proposed disqualification action. *Such person shall have 15 days from the date of mailing to advise in writing, in person, or both, why the action should not be taken.* (Emphasis supplied) 7 CFR 7.28(c); 7 CFR 7.29(c).

■■ The regulations do not afford plaintiffs an opportunity to be confronted with the evidence against them but place upon them the burden of coming forward with reasons why the proposed action should not be taken. This does not satisfy Fifth Amendment due process. The Court adopts the guidelines set down by the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484, as follows: (1) Written notice of the charges; (2) Disclosure of the evidence supporting the charges; (3) An opportunity to be heard in person and to present witnesses and evidence; (4) The right to confront and cross-examine adverse witnesses; (5) A neutral and detached hearing body requires that no person engaged in the investigation of defendants sit in judgment, and (6) A written statement by the factfinders.

No hearing procedure that utilizes less than that prescribed above will, in the opinion of this Court, provide procedural due process for those facing disqualification and termination. These are the minimum acceptable standards, and ones that must be imposed immediately to insure that the rights of those facing loss of employment are adequately protected.

■■ Where a person's good name, reputation, honor or integrity is at stake

because of what the government is doing to him, notice and an opportunity to be heard are essential. Board of Regents v. Roth, supra, 408 U.S. p. 573, 92 S.Ct. 2701; Wisconsin v. Constantineau (1971), 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515; Wieman v. Updegraff (1952), 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216; Joint Anti-Fascist Refugee Committee v. McGrath (1951), 341 U.S. 123, 170, 172, 71 S.Ct. 624, 95 L.Ed. 817. Where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. Greene v. McElroy (1959), 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377.

The Court is convinced after reviewing the regulations in question here that the hearing process must be expanded to allow a full inquiry on both sides into the charges and evidence brought forward to disqualify an ASCS employee. One case of particular importance to the determination of the issues before this Court is McNeill v. Butz, supra, and which this Court would rely on heavily in ordering changes in the hearing policy of the Department of Agriculture. Here is involved permanent disqualification from future employment with the ASCS. To be deprived not only of present government employment but of future opportunity is no small injury. Ibid., 480 F.2d p. 320, quoting Board of Regents v. Roth, supra, 408 U.S., p. 573, 92 S.Ct. 2701.

The Court in McNeill v. Butz was asked to give very close scrutiny to the termination procedures of the Department of Agriculture as they related to the ASCS program. This Court would adopt much of what that Court said, and set out some pertinent observations below:

* * * Although disqualification from ASCS may be a rather narrow disability, we can safely surmise that the stigma attached to such disqualifi-cation will effectively forclose other government employment opportunities. (footnote) We think it fair to assume that plaintiffs' private employment prospects will also be prejudiced. [480 F.2d p. 320]

The Court went on to note:

In applying these governing principles to the circumstances before us, we conclude that the relative natures of the government function and the private interest do not permit the government to discharge these employees without providing notice and a hearing at which the employees can confront and cross-examine the government's informers. [p. 322]

And added that:

We therefore conclude that in these circumstances, where untenured federal non-civil service employees are dismissed and permanently disqualified from future employment on the basis of secret charges which impugn their honesty and integrity, and where they have made timely and good faith requests to confront their nameless accusers, procedural due process requires that the government provide an opportunity to refute the charges by confronting and cross-examining such adverse witnesses, absent a specific finding that the government has "good cause" to protect its confidential informant with a cloak of absolute secrecy. (citation) [p. 325]

The Court in *McNeill* adequately expresses the opinion of this Court as to the need of procedural due process in proceedings that may have the effect of terminating or disqualifying an employee from government service. In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross examine witnesses. Goldberg v. Kelly (1970), 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287. The charges brought against plaintiffs Miller and McLaughlin are no different, and any future hearing involving the charges already brought against them or

any others that might be brought must conform to the guidelines set out above, as quoted from Morrissey v. Brewer, supra. In addition, plaintiffs are to be given 15 days from the date of this order in which to notify the appropriate officials of their decision as to such a hearing.

Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps no more, than mediocre ones. Procedure by presumption is always cheaper and easier than individualized determination. Stanley v. Illinois (1972), 405 U.S. 645, 656, 657, 92 S.Ct. 1208, 31 L.Ed.2d 551. Therefore,

It is hereby ordered that the complaint for preliminary and permanent injunction filed by the plaintiffs, Ervin Miller and Joseph McLaughlin, is dismissed.

It is further ordered that 7 C.F.R. 7.-28(c) and 7 C.F.R. 7.29(c) are declared unconstitutional as being in violation of the Due Process provision of the Fifth Amendment of the United States Constitution as they relate to hearings to be held for employees facing disqualification and termination from government service.

It is further ordered that the plaintiffs, Ervin Miller and Joseph McLaughlin, be given 15 days from the date of this order to notify the appropriate officials of their decision as whether or not they desire a hearing on the charges brought against them.

As written notice has already been received by plaintiffs, it is further ordered that if plaintiffs elect to have a hearing, the defendants shall disclose the evidence supporting the charges. Plaintiffs shall be given an opportunity to be heard in person and to present evidence and to confront and cross examine adverse witnesses. No person involved in the investigation of the charges against the plaintiffs may participate in the decision. A written statement by the fact-finders shall be prepared and copies transmitted to affected employees and their counsel.