Michael J. CAFFERELLO, Appellee,

v.

UNITED STATES CIVIL SERVICE
COMMISSION, Secretary of the
Navy, Appellants.

No. 78–2521.

United States Court of Appeals,
Ninth Circuit.

Submitted June 6, 1980.

Decided Aug. 11, 1980.

Nancy Jean Wilcox, Dept. of the Navy, San Francisco, Cal., for appellants.

Timothy J. Holzer, Jinks & Flick, Kailua-Kona, Hawaii, for appellee.

Before MERRILL, DUNIWAY and TANG, Circuit Judges.

TANG, Circuit Judge:

The Secretary of the Navy appeals the decision of the district court ordering that Michael Cafferello be reinstated to his civilian job with the Navy. The Navy contends that the procedures used to effectuate Cafferello's removal comported with due process and that the penalty of removal was not grossly disproportionate to the transgres-

sions committed by Cafferello. Finding no procedural error and no abuse of discretion, we are compelled to reverse the judgment of the district court.

At the time of his removal, Cafferello was Supervisory Physical Science Technician (grade GS 12/6), serving as head of the Radiological Support Division at the Pearl Harbor Naval Shipyard (PHNS). Including active military duty, he had accumulated over 19 years of governmental service.

On March 20, 1974, Cafferello received a notice of proposed removal from his supervisor, George Major, and on April 26, 1974 was removed. The notice charged Cafferello with the following: (1) unauthorized use of a government vehicle (to visit a car repair facility off base); (2) soliciting sales on two occasions on shipyard premises; (3) soliciting the sale of intoxicants on Navy premises; and (4) selling intoxicants on Navy premises and the introduction and possession of intoxicants on Navy premises on several occasions.

Cafferello appealed his removal and requested a hearing. On June 14, 1974, Commander Charles O. Swanson accepted the hearing examiner's recommendation that Cafferello's removal be sustained. Cafferello appealed this decision to the Federal Employee Appeals Authority (FEAA) which held that (1) removal was based upon reasons of which Cafferello had not been given notice; and (2) Cafferello was not afforded a fair opportunity to reply personally to the notice of proposed removal.

The agency appealed this decision to the Appeals and Review Board (ARB)[1] which rescinded the CSC decision and remanded the case for further proceedings. Upon remand, the FEAA sustained the charges and found Cafferello's removal to have been for such causes as would promote the efficiency of the service.

Cafferello did not appeal the FEAA decision, but instead filed suit in district court. On March 28, 1978 the district court entered

---

1. During the course of these proceedings, the title of the Board of Appeals and Review was changed to the Appeals Review Board. For convenience, we refer to the Board throughout as the ARB.

summary judgment for Cafferello and ordered his reinstatement, primarily finding that the ARB should have mitigated the punishment which, in light of the indecisive record, appeared to be overly severe. The Navy appealed.

## I.

■ Cafferello contends that he is entitled to reinstatement because the Navy's appeal to the ARB after the FEAA's first decision was untimely. After having considered further briefing on this issue, we reject Cafferello's contention.

Under 5 C.F.R. § 772.307(a), an appeal of an FEAA decision must "be filed with the Board within 15 calendar days after receipt of the decision on the initial appeal." The regulation also provides that the Board may extend the time for appeal when a party shows that circumstances beyond the control of the party prevented timely filing. In this case, the FEAA's decision was received by the Navy on October 1. The written decision notified the Navy that any appeal to the Board "must be submitted within the 15 calendar day time limitation." The Navy submitted its appeal to the Board by a letter dated October 15, but received by the Board on October 18. Cafferello contends that the appeal was "filed" October 18 and therefore was two days late. The Navy contends that the filing date customarily means the date of submission or the date of postmark, here October 15.

We do not know whether the ARB would construe "filed with the Board" to mean the date of submission, postmark, or receipt. Nor do we know, had it considered the Navy's filing untimely, whether the ARB would have granted the Navy an extension. Cafferello never informed the ARB that the appeal was not received until October 18, and consequently the ARB never considered Cafferello's present theory about the untimeliness of the Navy's appeal. We find that Cafferello's failure adequately to preserve this issue for review below precludes him from raising it now.

Apparently, the only time that Cafferello attempted to bring the matter of timeliness to the ARB's attention was in a letter to the ARB following the Navy's appeal. The letter stated "(t)his letter is not, nor is it to be construed to be a waiver of any claim we may have that the appeal filed by the Department of the Navy on October 15, 1974 (aforedescribed) was untimely" (emphasis added). Had the appeal been filed on October 15, it undisputedly would have been timely, and thus, the ARB may have concluded on the basis of Cafferello's characterization that the appeal was timely. We find nothing in the administrative record showing that Cafferello, either before the ARB or later on remand to the FEAA, pointed out the October 18 date of receipt or otherwise argued that the appeal was untimely. As a result, we can only speculate how the Board would have interpreted or applied its regulations. The fact that the ARB itself referred to the appeal as "submitted October 15, 1974", however, suggests that it considered the appeal to be timely.

## II.

Under the regulations then in effect, a party was required to appeal an adverse decision of the FEAA to the ARB. After the FEAA's adverse decision on remand, Cafferello did not appeal to the ARB but filed his suit in district court. The Navy contends that the suit should have been dismissed because he failed to exhaust administrative remedies.

■ Unless statutorily mandated, application of the doctrine of exhaustion of remedies is within the sound discretion of the courts. E. g., Montgomery v. Rumsfeld, 572 F.2d 250, 253–54 (9th Cir. 1978). From the ARB's initial decision, which was adverse to Cafferello, it was apparent what the ARB's position would have been on a second appeal. Exhaustion of administrative remedies is not required where their pursuit would be futile. See Pence v. Kleppe, 529 F.2d 135, 143 (9th Cir. 1976).

## III.

■ Our review here is limited to whether the agency substantially complied with

its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious, or an abuse of discretion. *Albert v. Chafee*, 465 F.2d 367 (9th Cir. 1972). The district court's decision is accorded no particular deference. *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1161 (9th Cir. 1980).

Throughout these proceedings, Cafferello has admitted the charges made against him. There were three sets of violations. First, Cafferello misused a government vehicle. He directed a subordinate employee to drive a Navy truck off base and then follow him to an auto dealership where he left his car for repairs. The two proceeded in the truck to official business, and then returned later in the day to pick up Cafferello's vehicle. Second, Cafferello used his official position for personal gain by selling merchandise to subordinate employees on the shipyard premises. Cafferello was a member of a shoppers union, and received a commission for new members he brought into the union. Two persons who had learned about Cafferello's connection with the union initiated contact with Cafferello and made purchases through him. Third, Cafferello solicited and sold liquor on Navy premises. On at least six occasions, Cafferello sold liquor to subordinate employees, sometimes receiving payment and transferring the liquor to the employees on the premises of the shipyard. These employees purchased a total of 24 bottles of liquor.

■ Although not denying these charges, Cafferello contends that he was denied due process by being removed for charges for which he was not given notice. It is undoubtedly improper for the agency to cite and rely on infractions not contained in the initial notice to justify its action. *See Albert v. Chafee*, 571 F.2d 1063, 1066 (9th Cir. 1977). Such, however, was not the case here.

At the hearing before the hearing examiner, George Major, Cafferello's supervisor, testified that he considered his past oral

discipline to Cafferello in his decision to remove Cafferello. After a discussion among counsel and the hearing examiner, Major was asked to clarify his statement. He testified that, although he tried to consider everything, both good and bad, that had occurred during Cafferello's employment, he did not remove Cafferello for any reason not stated in the charges.

■ Unlike *Albert* where the administrative decision clearly showed that the hearing examiner had taken new charges into consideration, the administrative decision here demonstrated that the examiner disavowed reliance on any past infractions of Cafferello. The examiner considered the possibility that Major may have relied on unalleged charges in his action, but was persuaded that Major's clarified testimony showed that he had not improperly relied on new charges but had only considered the whole person in determining appropriate punishment. The examiner's assessment of Major's actions was not unreasonable, and because the decisions of neither the examiner, the FEAA, nor the ARB suggest any reliance on past unproved charges against Cafferello, we also conclude that the challenged disciplinary action was based on the charges contained in the notice to Cafferello.[2]

### IV.

■ Cafferello also contends that he was denied due process because his personal reply officer, Larry Nelson, improperly acted as an investigator.

Prior to removal, an employee is entitled to be heard by an agency representative, at which time the employee must be permitted to plead extenuating circumstances or make other representations in mitigation of the proposed punishment. This step is an important one because it gives the agency an opportunity to reconsider its decision in a relaxed atmosphere before its position has become unalterable. *See Albert*, 571 F.2d at 1067.

---

2. In the circumstances of this case, it was of no consequence that the ARB erroneously believed Cafferello's violations to have spanned nine months instead of one or two months.

Unlike the employee in *Albert*, however, Cafferello was afforded this pre-removal step. Cafferello's complaint is that the reply officer acted improperly because he asked Cafferello questions about the various charges. However, as the ARB found, and as the record of the meeting between Cafferello and Nelson substantiates, Cafferello was afforded his right fully to plead mitigating circumstances. Nelson, for instance, asked whether Cafferello thought removal was appropriate, and Cafferello told Nelson about his past record, his technical competence, and his 18 years of federal service. Nelson did ask Cafferello questions, but this by itself was not improper because it is the reply officer's duty to understand fully the nature and circumstances of the charges in order to take or recommend final action. Although the reply officer's tone should ideally be conciliatory rather than prosecutorial, Cafferello here was not restricted in his ability to plead his case nor otherwise deprived of his opportunity to be heard.

V.

Cafferello's primary contention is that his removal was an abuse of the Navy's discretion.

Although it is rare that a court will review an imposition of punishment where it is within the scope of statutory or regulatory guidelines, reinstatement may nevertheless be ordered if the penalty is so harsh that there is an inherent disproportion between the offense and the punishment. *See Albert*, 571 F.2d at 1068. In arguing that his removal was unwarranted, Cafferello states that his offenses were relatively minor and that, upon notification, he acknowledged that his actions were improper and ceased all further wrongdoing. He also points to his veteran's status, his 19 years of federal service, and the fact that he needs only a few months more to qualify for his civil service pension.

Although harsh, the decision to remove Cafferello was not an abuse of the Navy's discretion. Cafferello was not charged with one isolated transgression, but with numerous, relatively serious offenses.[3] Quite reasonably, the Navy, in determining an appropriate punishment, took into account the fact that Cafferello was a supervisor. A supervisor's participation in profit-making activities may lessen his objectivity in dealing with subordinates, and conversely, pressure subordinates into making purchases in order to curry favor with the supervisor. Illegal activities, when engaged in by a supervisor may encourage like disobedience by the employees, and, additionally, compromise the supervisor's ability to discipline similar transgressions by subordinates. These dangers were amply evidenced in this case, as Cafferello's actions all involved subordinate employees and usually led them also to break Navy regulations. Although he may not have imposed the same discipline, we may not substitute our judgment for that of the agency. Because of the seriousness and frequency of Cafferello's violations, in addition to his supervisory position, the Navy did not abuse its discretion in ordering his removal.

The judgment of the district court is reversed.

---

3. *The seriousness of these offenses is evident from the fact that Congress has established that a person who uses a government vehicle for unofficial purposes is subject to removal,* see 31 U.S.C. § 638a(c)(2), *and that under the standard schedule of disciplinary offenses and* penalties for civilian employees in the Naval establishment, a single incident of possession or sale of liquor on Navy premises may result in the transgressor's removal. See CMMI 751–A.